POTTER HANDY LLP
Mark Potter, Esq., CA SBN 166317
Russell Handy, Esq., CA SBN 195058
Cara Townsend, Esq., CA SBN 220356
100 Pine Street, Ste 1250
San Francisco, CA 94111
Phone: (415) 534-1911
Email: ServeHT@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **Jane Doe (CD-00031),**<br><br>Plaintiff,<br><br>v.<br><br>**Shanti Hospitality, Inc.**;<br>**Motel 6 Operating, L.P.**;<br>**G6 Hospitality, LLC**;<br>**Rish Investments, Inc.**; and<br>**Does 1 Through 100**, inclusive;<br><br>Defendants. | Case No.<br><br>**Complaint for Damages:**<br><br>**1. 18 U.S.C. § 1595 (TVPRA);**<br>**2. 18 U.S.C. § 2255 (CAVRA);**<br>**3. Negligence;**<br>**4. Premises Liability;**<br>**5. Negligent Hiring, Retention, Training and Supervision;**<br>**6. Negligent Undertaking;**<br>**7. Cal. Civ. Code § 52.5;**<br>**8. Aiding and Abetting Intentional Torts;**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This action arises from a trafficking venture that began while Plaintiff was a minor and used hotel rooms as private, predictable commercial-sex venues supplying buyer access, keys, utilities, linens, cleaning, and concealment.
2. The complaint does not rest on generalized hotel-industry knowledge. It alleges property-specific conduct and a repeated combination of authentic

proof of minority, apparent age 14-15, cash rentals, five to ten or more older male visitors daily, brief visits at all hours, commercial-sex supplies, intoxication, an adult controller, multiple young women, repeat stays, and property histories where verified.

3. Defendants knowingly benefited from participation in, attempted benefit from, or conspired to benefit from ventures they knew or should have known engaged in acts violating Chapter 77 of Title 18.
4. For the minor period, Defendants also violated or participated in conduct violating section 1591 and caused injuries actionable under section 2255. That count is pleaded in the alternative because beneficiary-hotel application under CAVRA remains developing.
5. Plaintiff also asserts related California causes arising from the same transactions.

**PARTIES**

6. Plaintiff Jane Doe (CD-00031)[1] is a natural person and California citizen residing in Los Angeles County. She was a minor when the trafficking began and will seek pseudonym and protective relief.
7. Defendant SHANTI HOSPITALITY, INC. is alleged to have owned, operated, managed, or controlled the Look Motor Inn during at least part of the relevant period
8. Defendant MOTEL 6 OPERATING, L.P. is alleged to have owned and/or operated the Motel 6 at 5101 West Century Boulevard. A City record identified it as owner in December 2014.

---

[1] Contemporaneously with the filing of this Complaint, Plaintiff is filing an Application to Proceed Anonymously based on the inherently intimate and personal nature of the allegations. Plaintiff will provide her identity to counsel for the defendants upon entry of a protective order.

9. Defendant G6 HOSPITALITY, LLC is alleged to have exercised event-era operational, policy, reservation, training, audit, brand, and corrective functions connected to the Motel 6 properties.
10. Defendant RISH INVESTMENTS, INC. is alleged to have owned, operated, or controlled the New Gage during at least part of the relevant period.
11. DOES 1 through 100 include event-era owners, operators, lessees, managers, franchisees, franchisors, employers, permit holders, and contractors responsible for the remaining properties and acts.
12. Franchisor or management allegations are not based solely on trademarks, royalties, or ordinary franchising. Plaintiff alleges direct participation or undertaking and control over reservation, registration, visitor, training, reporting, audit, safety, review-monitoring, corrective, and termination functions connected to the injury.
13. Each Defendant acted through agents and employees within the scope of authority or ratified the conduct alleged; relationship theories are pleaded in the alternative.

## JURISDICTION AND VENUE

14. The Court has federal-question jurisdiction under 28 U.S.C. section 1331 because Plaintiff asserts claims under 18 U.S.C. sections 1595 and 2255.
15. The Court has supplemental jurisdiction under 28 U.S.C. section 1367 over the related California claims.
16. Venue is proper in the Central District of California under 28 U.S.C. section 1391 and 18 U.S.C. section 2255(c) because a substantial part of the events and omissions occurred here and the properties are located here.
17. The trafficking affected interstate commerce through online advertisements, cellular telephones, internet communications, hotel brands, reservation and

payment systems, and other facilities or instrumentalities of interstate commerce.

## FACTUAL ALLEGATIONS

### A. Recruitment, Force, Fraud, Coercion, and Minority

18. Plaintiff is a survivor of child sex trafficking and prolonged commercial sexual exploitation. She brings this action under a pseudonym to protect her privacy, safety, dignity, and recovery and will seek appropriate pseudonym and protective relief.

19. Plaintiff's twenty-eighth birthday is August 27, 2026.

20. Beginning in approximately 2015, while Plaintiff was a minor, a trafficker known as "R" groomed her through what she believed was a romantic relationship and then subjected her to approximately six years of commercial sexual exploitation.

21. The trafficker advertised Plaintiff through online platforms including Backpage, Backpagepro.com, CityXGuide, Megapersonals, and Private Delights. He used the aliases or "stage names" "K" and "A" for Plaintiff.

22. The trafficker repeatedly used physical and sexual violence, threats against Plaintiff and her family, drugs, intimidation, isolation, and psychological coercion. Plaintiff was not free to leave, decline buyers, retain proceeds, control her schedule, or obtain independent help.

23. He retained physical possession of Plaintiff's identification and telephone, controlled her access to money, personally transported her, monitored her movements, and allowed telephone use primarily to communicate with commercial-sex buyers.

24. At hotels, Plaintiff often checked herself in because the trafficker sought to avoid staff contact. She used her authentic identification, which displayed her

date of birth and showed that she was a minor; she did not use false identification.

25. Plaintiff appeared materially younger than her chronological age. Buyers commonly told her she looked approximately 14 or 15, making her youth visible to front-desk, management, housekeeping, and other staff who saw her.

26. Rooms were commonly paid for in cash. When Plaintiff did not register, the trafficker used associates. He remained nearby, watched the property, delivered alcohol, drugs, condoms, and supplies, and returned to monitor Plaintiff or collect proceeds.

27. The trafficker generally moved Plaintiff among hotels after stays of no more than approximately one week and returned to some properties repeatedly.

**B. Participation, Benefit, and Recurring Warning Signs**

28. Plaintiff was compelled to perform commercial sex act with multiple buyers daily. Depending on the property and day, approximately five to ten or more unrelated adult men entered and left her room, often for brief periods and at unusual hours throughout the day and night.

29. Many buyers were visibly much older. The repeated short visits, age disparity, volume, and timing were inconsistent with ordinary social visits and were observable in parking lots, exterior corridors, lobbies, stairways, and any surveillance systems.

30. Plaintiff was also compelled to work nearby streets and buyers' vehicles; buyers then accompanied her back to hotel rooms, creating repeated movement between the street, vehicles, and room.

31. Housekeeping personnel encountered or should have encountered condoms, lubricant, lingerie, unusual trash, alcohol or drug evidence, intoxication, and requests for multiple towels or cleanings.

32. At times the trafficker directed Plaintiff to refuse housekeeping. Staff knocked, accepted repeated refusals, and made no meaningful inquiry despite apparent youth, heavy visitor traffic, and other combined warning signs.
33. Plaintiff observed other girls, including girls who appeared very young, under similar control. The trafficker instructed her not to speak with them.
34. The hotel entities obtained room revenue and other direct or indirect financial benefits from the rooms and services used for Plaintiff's exploitation.
35. The hotel entities had superior control over registration, visitor rules, keys, common areas, employee training, incident reporting, surveillance, guest records, policy enforcement, and whether a suspicious rental would continue.
36. The failure to respond was not a single ambiguous missed clue. It occurred amid a combined pattern of apparent minority, authentic identification, cash transactions, older male visitors, day-and-night short visits, commercial-sex supplies, drug evidence, an adult controller nearby, multiple young women, and repeated or rotating stays.
37. The relevant venture included the trafficker, associates who registered or transported victims, buyers, and each Hotel Defendant to the extent it repeatedly supplied rooms and services, permitted buyer access, accepted venture revenue, and maintained a course of dealing despite actual or constructive knowledge of trafficking.
38. Participation is alleged through a common undertaking and course of conduct, not passive receipt of an unrelated payment. Personnel processed the transactions that supplied the venue, interacted with Plaintiff or her room, and controlled whether the venture could continue on the premises.
39. Each Defendant obtained a financial or other benefit, including room charges, occupancy, royalties, management fees, or preservation of a revenue relationship causally connected to the rooms used for exploitation.

40. After January 3, 2023, section 1595 expressly encompasses attempts and conspiracies to benefit. Under the Ninth Circuit's 2026 en banc Ratha decision, that amendment is clarifying and applies to pre-enactment conduct. Plaintiff pleads completed liability and alternative attempt/conspiracy theories.

**C. Property-Specific Allegations**

**Look Motor Inn — 7827 Crenshaw Boulevard, Los Angeles**

41. Plaintiff recalls using the Look Motor Inn on or about April 2, 2015 to sleep, shower, change clothes, and prepare before being driven to commercial sex "out calls."

42. Los Angeles business-license data identifies SHANTI HOSPITALITY, INC. as doing business as the Look Motor Inn at this address with a reported location start in 2005.

**Willow Tree Inn — 1919 West Artesia Boulevard, Compton**

43. Plaintiff recalls arriving around mid-April 2015 after the Look Motor Inn. She describes this as the first hotel from which the core trafficking operation began and a property to which she returned.

44. While visibly underage, Plaintiff used authentic identification, paid cash, and served approximately ten buyers per day between street and room activity. Staff failed to respond to her age, identification, older male visitors, and repeated short stays.

**Motel 6 Los Angeles-LAX / Inglewood — 5101 West Century Boulevard**

45. Plaintiff recalls trafficking at this property in approximately May through June 2015. She had approximately five to ten short-duration visitors per day, arriving and leaving throughout the day and night. Housekeeping accepted repeated refusals to access the rooms without meaningful inquiry.

46. A December 2014 City of Inglewood planning record identifies MOTEL 6 OPERATING, L.P. as the property owner immediately before Plaintiff's 2015 stay.

47. Public guest reviews tied to July and December 2015 described naked women on balconies and prostitutes and drug dealers around the property. Those reviews corroborate a contemporaneous environment but postdate the presently identified May-June initial stay.

**Willow Brook Inn / Motel 6 Pomona — 2470 South Garey Avenue**

48. Plaintiff identifies this property as a trafficking location during the approximately six-year period.

49. Public reporting documents a fatal shooting in a room in 2009 and a fatal stabbing of a woman in a room in November 2014. These events support notice of serious violent crime and the need for reasonable security but are not trafficking-specific evidence.

**New Gage Motel — 6310 South Figueroa Street, Los Angeles**

50. Plaintiff identifies the New Gage as a trafficking location.

51. In 2023 the Los Angeles City Attorney filed a nuisance action describing entrenched prostitution and violent crime at the New Gage since at least 2017, more than a dozen vice investigations, and approximately sixteen prostitution arrests, including an incident involving a trafficked minor. The City identified RISH INVESTMENTS, INC. and related operators.

52. If Plaintiff's stay overlapped the documented period, the enforcement history materially supports property-specific notice and a failure to abate.

**New Bay Motel — 8301 South Figueroa Street, Los Angeles**

53. Plaintiff recalls approximately six to ten short-duration visitors entering and leaving throughout the day and night. She recalls sparse visible staff and housekeeping that did not press further when she refused entry.

54. A 2023 Los Angeles City Planning staff report records 39 investigative or arrest-related reports between January 2019 and June 2022, extensive calls for service, prostitution, rape, weapons, narcotics, and violence. It describes a January 2021 rape involving an underage person engaged in commercial sex and a May 2021 incident in which a manager recognized an underage trafficking victim, knew her room, and identified a suspected trafficker who may have rented rooms for sex workers and juveniles.

55. The report identifies JERUBHA LIFE LLC and the PATEL FAMILY LIVING TRUST as owners and states that AATHARVA08 LLC began operating on December 1, 2019.

**Satellite Motel — 12012 South Figueroa Street, Los Angeles**

56. Plaintiff identifies the Satellite as a trafficking location.

57. A published 2018 fictitious-business-name statement identifies SUMANTRAI R. AHIR as doing business as Satellite Motel and reports commencement in March 2001. The filing is an ownership/operator lead, not conclusive event-era proof.

**King Palace Inn — 9714 South Figueroa Street, Los Angeles**

58. Plaintiff identifies the King Palace as a trafficking location.

59. The property lies within the broader South Figueroa commercial-sex corridor later described by law enforcement. Corridor context does not substitute for property-specific notice.

**Signal Motel — 11316 South Figueroa Street, Los Angeles**

60. Plaintiff identifies the Signal as a trafficking location.

61. Los Angeles business-license data identifies "O Hasmukh V / Paoma Patel" as doing business as Signal Motel with a reported location start in 2002. Resolve spelling, legal identities, event-era role, and citizenship before naming any individual.

**D. Knowledge, Causation, and Damages**

62. Defendants' knowledge is supported by direct employee observations and aggregation of information within their organizations. An entity cannot avoid knowledge by fragmenting registration, housekeeping, security, management, complaint, and incident information among personnel or systems.

63. Defendants had access to guest records, cash folios, identification, repeat-stay histories, surveillance, key and visitor data, housekeeping notes, towel requests, incident reports, police contacts, audits, complaints, reviews, and insurance-loss histories.

64. The rooms and services materially enabled recruitment of buyers, concealment, quotas, control, and repeated commercial sex. Without continued hotel access, the venture would have been less private, efficient, predictable, and protected from intervention.

65. As a direct and foreseeable result of the trafficking and Defendants' conduct, Plaintiff suffered repeated sexual assaults, physical violence, intoxication, fear, humiliation, deprivation of liberty, and bodily injury.

66. Plaintiff contracted gonorrhea and chlamydia, became pregnant, and underwent an abortion under pressure from the trafficker and amid coercion and drug use.

67. Plaintiff has experienced post-traumatic stress, anxiety, depression, paranoia, and other serious psychological injuries.

68. After escaping, Plaintiff experienced periods of homelessness and interruption of mental-health treatment because of cost. In 2026 she resumed treatment and joined a mental-health cohort and peer-support group.

69. Plaintiff has achieved sobriety, exited the sex industry, obtained stable housing and employment, and is raising her child, but continues to suffer permanent and ongoing trauma.

**PLEADING BASIS, ALTERNATIVE ALLEGATIONS, AND INFORMATION WITHIN DEFENDANTS' CONTROL**

70. Plaintiff alleges facts concerning her own experiences on personal knowledge. Allegations concerning Defendants' ownership, operation, management, staffing, internal communications, training, reservation systems, guest records, incident reports, surveillance, audits, complaints, franchise relationships, and allocation of responsibility are alleged on information and belief because those matters are peculiarly within Defendants' possession and control.

71. The precise legal and operational relationship among the entities associated with each Hotel Property—including which entity employed particular front-desk, housekeeping, security, maintenance, and managerial personnel—is not reasonably available to Plaintiff before discovery. Plaintiff therefore pleads those relationships and the resulting direct, agency, vicarious, joint, and alternative liability theories in the alternative, as the applicable pleading rules permit.

72. Plaintiff does not seek to impose liability on any Defendant merely because it was associated with a hotel brand. Each claim is based on the Defendant's own conduct; the conduct of its officers, managing agents, employees, and actual or ostensible agents; its control over the instrumentality that caused the harm; its receipt and use of information generated through the property or brand system; and, where applicable, its knowing receipt of revenue from its participation in the room-rental course of conduct alleged below.

73. Each Defendant is alleged to be responsible only for the Hotel Property or Properties with which it was associated and for the periods during which it owned, leased, operated, managed, controlled, franchised, supervised, or supplied material lodging services to that property. References to "Hotel Defendants" are a drafting convenience and do not erase the property-specific

allegations or the requirement that liability be proved separately as to each Defendant.

74. To the extent discovery shows that a different Defendant performed a particular function at a Hotel Property, Plaintiff pleads in the alternative that the Defendant actually performing or controlling that function is liable. Plaintiff will amend the pleading to conform the entity-specific allegations to the records that Defendants possess.

## PLAINTIFF'S MINORITY, VULNERABILITY, AND THE TRAFFICKER'S COERCIVE CONTROL

75. Throughout the relevant hotel trafficking described in this Complaint, Plaintiff was under eighteen years old. Her youth was visible. She was repeatedly brought to commercial lodging properties by, or under the control of, an older person who dictated where she stayed, who entered the room, what sexual acts she was required to perform, and what happened to the proceeds.

76. The trafficker maintained control through a combination of violence, threats, intimidation, drugs, isolation, and control over Plaintiff's identification, telephone, transportation, movements, and money. Plaintiff could not freely leave, select the rooms, refuse the men sent to her, retain the money paid for access to her, or seek help without risking retaliation.

77. The commercial sex acts occurring in the rooms were not consensual hotel activity. They were repeated sexual assaults and acts of child sex trafficking carried out for the trafficker's financial benefit. Because Plaintiff was a minor, the commercial-sex conduct constituted sex trafficking regardless of whether a particular observer also perceived every means of force, fraud, or coercion used away from the front desk.

78. Plaintiff's youth, dependence, impaired condition, fear, exhaustion, lack of autonomy, and subordination to the controlling adult were observable in the context of the repeated room transactions and visitor traffic. These facts

became more—not less—apparent as stays were extended, renewed, or repeated.

**THE HOTEL ROOMS AND SERVICES WERE MATERIAL INSTRUMENTALITIES OF THE TRAFFICKING**

79. The Hotel Properties were not incidental locations. The rooms supplied the privacy, beds, bathrooms, electricity, internet access, parking, entrances and exits, linens, towels, housekeeping, trash removal, anonymity, and repeated access needed to sell Plaintiff to numerous men while shielding the conduct from public view.

80. The trafficker used the Hotel Properties as temporary commercial-sex workplaces. The ability to obtain and retain a room, receive multiple visitors, renew or extend the occupancy, obtain replacement keys and supplies, and avoid meaningful intervention materially increased the number of buyers who could be brought to Plaintiff and the duration of her exploitation.

81. Each room night, extension, key issuance, visitor admission, cleaning service, supply replacement, and other lodging service furnished after warning signs had accumulated enabled the venture to continue. Defendants' conduct therefore involved more than a passive failure to prevent crime committed somewhere on their premises; it included the continued commercial provision of the very facilities and services being used to carry out the trafficking.

**DIRECT AND CUMULATIVE INDICATORS OBSERVABLE AT THE HOTEL PROPERTIES**

82. During the stays alleged above, front-desk, housekeeping, security, maintenance, and managerial personnel had repeated and complementary opportunities to observe what was occurring. Front-desk personnel handled check-in, identification, payment, renewals, keys, visitor inquiries, telephone calls, and complaints. Housekeeping personnel entered or approached the room, delivered linens and supplies, collected trash, and observed its condition.

Managers and security personnel had access to common areas, parking lots, hallways, cameras, incident reports, registration records, and employee reports.

83. The indicators presented in combination included an underage or strikingly young-appearing girl accompanied or controlled by an older adult; room arrangements and payments controlled by someone else; cash, prepaid, short-term, extended, renewed, or repeated room transactions; little or no ordinary luggage; and an adult who spoke for Plaintiff, monitored her, controlled access to her, or collected money.

84. The indicators also included a succession of unrelated adult men going directly to and from the room, often staying only a short time and arriving at unusual hours; visitor volume inconsistent with ordinary lodging use; men arriving without luggage; repeated requests for towels, linens, or supplies; commercial-sex materials and used condoms; unusual trash and room conditions; and frequent interruptions associated with buyer turnover.

85. Additional indicators included drugs, intoxication, disturbances, violence or threats, Plaintiff's impaired, fearful, exhausted, withdrawn, or controlled presentation, the presence of other young women in similar circumstances, and repeat use of the same property or room-rental process by the trafficker or associates.

86. Plaintiff does not allege that any one neutral fact, viewed in isolation, necessarily established trafficking. She alleges that the totality, repetition, concentration, and escalation of the indicators—combined with direct employee observations across multiple hotel functions—made the commercial sexual exploitation of a minor apparent or, at minimum, created a duty to inquire and a basis to know that the rooms were being used for trafficking.

87. Information acquired by one employee in the course and scope of hotel operations was required to be communicated through ordinary management, security, housekeeping, incident-reporting, shift-change, and guest-account

processes. A Defendant may not avoid responsibility by compartmentalizing front-desk, housekeeping, security, management, reservation, and guest-complaint information that its own operations generated.

**DEFENDANTS' KNOWLEDGE, PARTICIPATION, AND FINANCIAL BENEFIT**

88. The room transactions created recurring direct commercial dealings between the trafficker or associates and the Defendants responsible for each Hotel Property. Defendants accepted payment, issued and renewed access to rooms, furnished ongoing lodging services, and permitted the predictable stream of short-term male visitors notwithstanding the cumulative indicators described above.

89. Defendants obtained revenue from the room rentals and related charges. The entities operating the properties retained room and ancillary revenue; entities supplying reservation, brand, management, or franchise services received the fees, royalties, assessments, or other economic benefits generated by the occupied rooms to the extent established by their agreements and records.

90. The financial benefit was connected to Defendants' participation in the room-rental course of conduct, not merely to a remote association with a wrongdoer. Defendants were paid for repeatedly furnishing and maintaining the physical place in which Plaintiff was sold and assaulted and for continuing access after circumstances required inquiry or intervention.

91. Actual knowledge may be inferred from the repeated, concentrated, and highly distinctive facts observed at each property, the communications and records generated by hotel operations, the continuation of services after those observations, and any warnings, complaints, incidents, or employee reports reflected in Defendants' records. At a minimum, the same circumstances establish that the responsible Defendants knew or should have known that the venture using their rooms was engaged in sex trafficking.

92. A Defendant that failed to train employees to recognize or report obvious trafficking indicators cannot rely on its own lack of training to negate constructive knowledge. Nor may a Defendant avoid knowledge by choosing not to review the registration, visitor, incident, housekeeping, surveillance, complaint, or payment information available through the operations it controlled.

**FAILURE TO USE REASONABLE AND AVAILABLE PROTECTIVE MEASURES**

93. Once the cumulative indicators arose, reasonable measures included speaking with Plaintiff away from the controlling adult, confirming her age and identity, asking whether she was safe, conducting a welfare check, escalating the matter to a manager or security officer, documenting and sharing the observations, limiting or stopping visitor access, declining to extend the room, preserving relevant records, contacting law enforcement or an appropriate trafficking resource, and following established safety and anti-trafficking procedures.

94. Defendants did not take reasonable and effective measures to protect Plaintiff. Instead, the room access and lodging services continued, allowing additional buyers to enter and additional assaults to occur. To the extent an employee made a limited inquiry, the inquiry was not reasonably designed or carried through to determine whether a visibly minor guest under an adult's control was being commercially exploited.

95. The burden of these measures was slight compared with the gravity and foreseeability of the harm. The measures did not require hotel personnel to conduct a criminal investigation or conclusively diagnose trafficking; they required ordinary escalation and protective action in response to an extreme cluster of danger signals involving a child.

96. Defendants' duties and breaches are not premised solely on generalized crime in the neighborhood or on later public reports. They arise from the

contemporaneous, property-level course of conduct alleged in this Complaint and the observations and records generated while Plaintiff was being trafficked in Defendants' rooms.

## AGENCY, MANAGEMENT RESPONSIBILITY, AND ATTRIBUTION OF CONDUCT

97. The on-site employees and managers who checked guests in, accepted and processed payment, issued keys, renewed stays, supplied rooms, performed housekeeping, monitored common areas, addressed disturbances, and responded to complaints acted within the course and scope of their work for the Defendant or Defendants responsible for those functions. Their acts, omissions, and knowledge are attributable to their employers and principals.

98. Property-level managers exercised substantial discretionary authority over guest safety, room access, employee supervision, incident escalation, security, and continued rentals. To the extent they consciously permitted the course of conduct to continue after receiving or observing trafficking indicators, they acted as managing agents and their decisions constituted or ratified corporate policy for purposes of all remedies allowed by law.

99. Any brand, franchisor, management, reservation, or parent entity named in the Complaint is sued for its own conduct to the extent it established or controlled safety-related standards; required guest-registration or property-management systems; collected and analyzed reservation, quality-assurance, audit, incident, or complaint information; trained or undertook to train personnel; directed responses to safety incidents; exercised control over the relevant instrumentality; or knowingly continued to derive revenue while failing to use the information and authority it possessed.

100. In the alternative, to the extent a Defendant represented through signage, reservations, websites, uniforms, loyalty or guest-service systems, policies, or other manifestations that the persons operating a Hotel Property

acted for it, and the property accepted the benefits and burdens of that relationship, Plaintiff alleges actual or ostensible agency to the full extent supported by discovery.

**CAUSATION, FORESEEABILITY, AND HARM**

101. The trafficker's and buyers' intentional crimes do not sever causation. Those crimes were the very risk made apparent by the trafficking indicators and the very harm that reasonable hotel practices, intervention, and cessation of room access were required to address.

102. Had the responsible Defendants acted when the cumulative indicators first became apparent, Plaintiff would have been separated from the trafficker, identified as a minor in danger, provided an opportunity to obtain help, or at least denied continued use of the property as a site for serial commercial sexual assaults. Each additional room night and each continuation of access after that point exposed Plaintiff to additional buyers and additional injury.

103. Defendants' acts and omissions were substantial factors and proximate causes of the duration, frequency, concealment, and resulting injuries of the trafficking that occurred at their respective properties. Plaintiff seeks no duplicative recovery and will allocate damages among Defendants and occurrences as the evidence permits.

104. As a direct and legal result, Plaintiff suffered severe physical and psychological injury, pain, fear, humiliation, loss of dignity and autonomy, emotional distress, disruption of normal development, impairment of relationships and enjoyment of life, and economic and treatment-related losses in amounts to be proved. The injuries are continuing.

## TIMELINESS AND EQUITABLE ALLEGATIONS

105. Plaintiff was a minor when the trafficking and childhood sexual assaults alleged in this Complaint occurred. She invokes every applicable minority tolling provision, delayed-accrual rule, statutory discovery period, revival provision, and limitations period measured from attainment of majority or discovery of adult psychological injury.

106. The identities, internal roles, knowledge, records, and revenue relationships of the entities responsible for the Hotel Properties were not apparent to a trafficked child and are largely concealed in corporate, franchise, property-management, reservation, and employment records unavailable to Plaintiff. Plaintiff could not reasonably have discovered the full institutional role of each Defendant while under the trafficker's control or merely from the exterior brand displayed at a property.

107. To the extent any Defendant contends that a claim accrued earlier, Plaintiff pleads delayed discovery and equitable tolling in the alternative. Defendants had superior and exclusive access to records revealing ownership, operation, employee observations, complaints, incidents, audits, and the division of responsibility, while Plaintiff's minority and trafficking-related trauma impaired her ability to identify and pursue the institutional wrongdoers.

## FIRST CAUSE OF ACTION

**Civil Beneficiary Liability Under the TVPRA — 18 U.S.C. § 1595(a)**

**(Against All Defendants)**

108. Plaintiff incorporates the preceding allegations.

109. Plaintiff incorporates all preceding allegations. This claim is asserted separately against each Defendant whose own conduct satisfies 18 U.S.C. § 1595; liability is not alleged merely because an entity shared a brand name or had a contractual relationship with another Defendant.

110. The underlying venture engaged in conduct violating 18 U.S.C. § 1591 by recruiting, harboring, transporting, providing, obtaining, maintaining, patronizing, or soliciting Plaintiff, a minor, for commercial sex acts. Because Plaintiff was under eighteen, proof that the trafficker used an additional means of force, fraud, or coercion is unnecessary to establish the underlying minor-sex-trafficking violation, although such means were in fact used.

111. Plaintiff pleads the relevant venture in the alternative as (a) the sex-trafficking undertaking among the trafficker, associates, and buyers that repeatedly used the Hotel Properties; (b) the recurring commercial undertaking through which the trafficker or associates obtained rooms and lodging services from the responsible Hotel Defendant to facilitate commercial sex; and (c) any overlapping venture shown by Defendants' records and course of dealing.

112. Each liable Defendant participated by taking part in the venture's course of conduct through repeated room transactions and the affirmative provision, renewal, and maintenance of rooms, keys, privacy, utilities, supplies, cleaning, parking, visitor access, reservations, and other services after the circumstances described above made the trafficking apparent or reasonably knowable.

113. The participation alleged is operational and causal. It is not based on passive association, ordinary arm's-length commerce viewed in isolation, or the mere existence of a franchise relationship. The rooms and continuing hotel services were material components of the venture's method of exploiting Plaintiff and were supplied through recurring interactions with the trafficker or associates.

114. Each liable Defendant knowingly benefited financially or by receiving something of value from that participation, including room revenue, occupancy-related income, fees, royalties, assessments, reservation revenue, or other benefits tied to the stays in which Plaintiff was exploited.

115. Based on the totality of the contemporaneous indicators, each liable Defendant knew or should have known that the venture was engaged in an act in violation of Chapter 77. Actual knowledge is additionally alleged against those Defendants whose personnel observed, received reports of, discussed, documented, or deliberately disregarded the repeated trafficking indicators.

116. The statutory knowledge standard is satisfied property by property and Defendant by Defendant through direct observation, records, repeated transactions, and reasonable inferences from the cumulative facts. Plaintiff does not rely solely on generalized hotel-industry awareness.

117. Defendants' continued participation and benefit after notice prolonged the venture's use of their properties and caused or increased Plaintiff's injuries. The commercial-sex assaults and trafficking injuries were a foreseeable and direct result of continuing to furnish rooms and access under the circumstances alleged.

118. Plaintiff was a victim of Chapter 77 violations, including section 1591. While a minor she was caused to engage in commercial sex; throughout the venture force, fraud, coercion, violence, drugs, threats, isolation, and psychological control compelled her.

119. Each Defendant knowingly benefited financially or by receiving something of value from participation in a venture that it knew or should have known engaged in an act violating Chapter 77.

120. The benefit included room revenue, fees, occupancy, royalties, management or franchise revenue, and preservation of a profitable relationship tied to the rooms and services used by the venture.

121. Defendants participated through a continuous course supplying the venue: repeated registration and payments, keys, serial buyer access, linens and housekeeping, policy nonenforcement, and continuation despite cumulative notice.

122. Knowledge is supported by apparent and documented minority, authentic ID, older and numerous visitors, brief visits at unusual hours, an adult controller, repeat cash stays, multiple young women, commercial-sex items, drugs, intoxication, housekeeping encounters, complaints, incidents, and property histories where applicable.

123. In the alternative, Defendants attempted or conspired to benefit by agreeing expressly or tacitly through repeated dealings to continue supplying rooms and services and preserve revenue despite known or obvious trafficking indicators.

124. Defendants' conduct caused and prolonged Plaintiff's injuries. Plaintiff seeks damages, punitive damages, fees, costs, and all relief authorized by section 1595.

125. The claim is timely under section 1595(c), including the later of ten years after accrual or ten years after majority for minor offenses.

**SECOND CAUSE OF ACTION**

**Civil Remedy for Personal Injuries to a Minor — 18 U.S.C. § 2255**

**(Against Defendants Whose Minor-Period Conduct Violated § 1591; Pleaded in the Alternative)**

126. Plaintiff incorporates the preceding allegations.

127. While a minor, Plaintiff was a victim of sex trafficking prohibited by section 1591 and suffered personal injury.

128. This claim is pleaded in the alternative against only those Defendants whose conduct constitutes a predicate violation covered by 18 U.S.C. § 2255, including beneficiary liability under 18 U.S.C. § 1591(a)(2). It is not based merely on the broader "should have known" civil standard in § 1595.

129. Plaintiff was a minor and a victim of the completed sex-trafficking offense alleged above and suffered personal injury as a result. The trafficker's

commercial exploitation of Plaintiff was an offense under § 1591 and the related provisions identified in § 2255.

130. The Defendants subject to this count knowingly benefited from participation in the venture and knew, or acted in reckless disregard of the fact, that the venture was engaged in commercial sex involving a minor. That knowledge and reckless disregard are inferred from the concentrated and repeated property-level facts, direct employee observations, internal communications and records, and continuation of the room transactions despite those facts.

131. The rooms, access, and services those Defendants provided materially facilitated the predicate offense and caused personal injury to Plaintiff. Plaintiff seeks the actual or statutory damages and all other relief authorized by § 2255, without duplicative recovery.

132. Each Defendant subject to this count knowingly benefited from participation in a venture engaged in Plaintiff's commercial sex and knew or recklessly disregarded, or had a reasonable opportunity to observe, that Plaintiff was under 18 and would be caused to engage in a commercial sex act.

133. Participation was direct and property-specific: supplying the room, controlling access, interacting with Plaintiff or her room, accepting venture payments, and continuing despite a reasonable opportunity to observe minority and serial commercial sex.

134. Plaintiff seeks actual damages or $150,000 liquidated damages, punitive damages, attorney fees, costs, and appropriate equitable relief.

135. Section 2255(b) contains no time limit. This count is pleaded in the alternative because courts differ on beneficiary-hotel liability.

**THIRD CAUSE OF ACTION**

**Negligence**

**(Against All Defendants)**

136. Plaintiff incorporates the preceding allegations.

137. Defendants owed reasonable-care duties arising from the innkeeper-guest and proprietor-invitee relationships, control over the premises, their undertakings, and recurring foreseeable commercial-sex and criminal activity.

138. Defendants breached through failures in registration, visitor control, inspection, monitoring, incident review, training, supervision, escalation, intervention, and continued rental despite cumulative warning signs.

139. Each Defendant subject to this count owned, possessed, leased, operated, managed, maintained, or exercised sufficient control over the relevant Hotel Property or the specific safety-related instrumentality to owe a premises duty.

140. The dangerous condition included the continued use of rooms and common areas for repeated commercial sexual exploitation of a visibly minor person, combined with deficient registration, visitor-control, monitoring, communication, security, and intervention practices that allowed the known or reasonably knowable danger to persist.

141. Defendants had actual or constructive notice through direct employee observations, repeated transactions, room conditions, complaints or disturbances, property records, and the cumulative indicators described above. The condition existed long enough and recurred frequently enough that reasonable inspection and management would have discovered it.

142. Defendants failed to correct the condition, stop or limit the dangerous use, warn or protect Plaintiff, or take other reasonable measures. That failure was a substantial factor in the subsequent assaults and injuries.

143. Reasonable low-burden measures were available and proportionate to the gravity of child sexual exploitation.

144. The breaches were substantial factors and legal causes of additional trafficking and Plaintiff's injuries.

**FOURTH CAUSE OF ACTION**

**Premises Liability**

**(Against Owner and Operator Defendants)**

145. Plaintiff incorporates the preceding allegations.

146. Defendants owned, leased, occupied, controlled, managed, or operated the premises and permitted Plaintiff to remain as a paying guest.

147. Defendants knew or should have known that the premises were being used for recurring commercial sex, unregistered visitor traffic, drugs, violence, and exploitation of young women, and failed to inspect, warn, correct, enforce, or protect.

148. The dangerous conditions and negligent operation caused Plaintiff's injuries.

**FIFTH CAUSE OF ACTION**

**Negligent Hiring, Retention, Supervision, and Training**

**(Against Employer and Control Defendants)**

149. Plaintiff incorporates the preceding allegations.

150. Defendants selected, employed, retained, supervised, trained, and controlled personnel handling registration, guest access, housekeeping, security, management, escalation, and compliance.

151. Defendants knew or should have known personnel and systems were unfit or inadequate after repeated failures involving apparent minority, serial short visits, commercial-sex evidence, drugs, and incidents.

152. The responsible Defendants selected, employed, retained, assigned, trained, supervised, and managed personnel entrusted with guest registration, keys, room renewals, housekeeping, security, incident response, and guest safety.

153. Those Defendants knew or should have known that employees who were not reasonably screened, instructed, supervised, and required to report trafficking indicators were unfit or unprepared to perform safety-sensitive hotel functions without creating an unreasonable risk to minors and other vulnerable occupants.

154. The failure to provide and enforce reasonable training and supervision concerning minor identification, adult-controlled occupants, rapid visitor turnover, room conditions, documentation, escalation, welfare checks, and law-enforcement reporting caused employees to ignore, normalize, or fail to act on the indicators surrounding Plaintiff.

155. The resulting negligent acts and omissions occurred within the work assigned to those employees and were substantial factors in the continuation of Plaintiff's exploitation and injuries.

156. The hiring, retention, supervision, discipline, and training failures substantially caused Plaintiff's injuries. Post-2019 California training requirements informed the standard of care but do not create automatic private liability.

**SIXTH CAUSE OF ACTION**

**Negligent Undertaking**

**(Against Safety, Training, Audit, and Policy Defendants)**

157. Plaintiff incorporates the preceding allegations.

158. Defendants undertook safety, surveillance, registration, visitor-control, training, audit, reporting, complaint, review-monitoring, quality-assurance, and corrective functions intended to protect guests.

159. They performed those undertakings without reasonable care, increased risk, and induced reliance by personnel and guests on ineffective systems and apparent compliance.

160. By adopting, advertising, requiring, or implementing guest-safety, registration, security, inspection, quality-assurance, complaint-response, employee-training, and incident-reporting programs, the responsible Defendants undertook services necessary for the protection of hotel occupants, including vulnerable minors.

161. They performed those undertakings without reasonable care by failing to communicate property-level information, failing to train and supervise the persons charged with implementation, failing to use reservation and incident information available to them, and continuing room access despite circumstances requiring escalation.

162. The negligent performance increased the risk by providing a false appearance of controlled and monitored lodging operations while allowing the trafficker to continue using the rooms; displaced or assumed safety functions that otherwise had to be performed by the property operator; and induced reliance by property personnel, guests, and others on the safety systems Defendants chose to control.

163. The negligent performance substantially caused continued trafficking and injury.

**SEVENTH CAUSE OF ACTION**

**Violation of California Civil Code Section 52.5**

**(Against Intentional-Participation Defendants Only; Pleaded in the Alternative)**

164. Plaintiff incorporates the preceding allegations.

165. Plaintiff was a victim of human trafficking under Penal Code section 236.1.

166. Defendants subject to this count actually knew of the trafficking and intentionally acted to effect, maintain, facilitate, conceal, or profit from it, rather than merely failing to recognize warning signs.

167. This intentional statutory claim is asserted only against those Defendants shown to have had actual knowledge of the trafficking and to have intentionally assisted, facilitated, or participated in it. Plaintiff does not rely on constructive knowledge alone for this count.

168. The underlying conduct constituted human trafficking under California Penal Code section 236.1 because Plaintiff, a minor, was caused, induced, or persuaded to engage in commercial sex acts and was deprived of personal liberty for the purpose of obtaining forced services.

169. Actual knowledge and intentional assistance are inferred, as to the Defendants subject to this count, from direct observation or reporting of Plaintiff's minority and exploitation, repeated dealings with the controlling adult, continuation of room access after those observations, and any warnings, payments, communications, concealment, policy overrides, or ratification shown by Defendants' records.

170. The knowing provision and continuation of rooms and lodging services under those circumstances substantially assisted the trafficking and caused injury to Plaintiff. Plaintiff seeks the remedies authorized by Civil Code section 52.5, including compensatory and punitive relief, fees, costs, and any statutory enhancement proved.

171. Plaintiff seeks all remedies authorized by section 52.5, including actual, compensatory, punitive, injunctive, enhanced, fee, expert, and cost relief.

172. The count is timely under the statute's alternative periods and tolling provisions.

**EIGHTH CAUSE OF ACTION**

**Aiding and Abetting Trafficking, Sexual Battery, and False Imprisonment**

**(Against Actual-Knowledge Defendants Only; Pleaded in the Alternative)**

173. Plaintiff incorporates the preceding allegations.

174. The trafficker committed intentional torts including trafficking, compelled sexual battery, assault, battery, and false imprisonment.

175. Defendants subject to this count had actual knowledge of the specific torts and consciously provided substantial assistance for the purpose of facilitating them.

176. This claim is asserted only against Defendants that had actual knowledge of the specific primary torts being committed against Plaintiff, including sexual battery, false imprisonment, and intentional infliction of emotional distress, and that gave substantial assistance or encouragement to their commission.

177. Actual knowledge is inferred from direct employee and managerial observations, repeated reports or incidents, the obvious commercial-sex pattern involving a minor, communications with the trafficker or associates, and continuation of the room transactions after the nature of the conduct was known.

178. Substantial assistance consisted of knowingly continuing to provide the private rooms, access, keys, renewals, utilities, supplies, cleaning, visitor entry, concealment, and operational services essential to the repeated torts. The assistance was a substantial factor in their continuation and Plaintiff's injury.

179. This count is pleaded in the alternative and does not rest on mere negligence, generalized suspicion, or ordinary room rental without actual knowledge.

180. Assistance included affirmative, atypical, or purpose-driven conduct such as knowingly continuing the room, providing concealment or access,

warning participants, suppressing known incidents, or deliberately overriding safety rules.

181. The assistance substantially caused Plaintiff's injuries. Constructive knowledge and ordinary services alone are not the basis of the count.

182. To the extent punitive damages are recoverable on a claim, Plaintiff alleges that officers, directors, or managing agents with substantial discretionary authority over property safety and operations knew of, authorized, ratified, or consciously disregarded the continuation of the conduct. The identity and communications of those managing agents are within Defendants' exclusive possession and will be established through discovery.

## PRAYER FOR RELIEF

183. WHEREFORE, Plaintiff requests judgment and relief as follows:

a. Past and future economic and noneconomic damages according to proof;
b. Punitive and exemplary damages against each Defendant whose conduct satisfies the applicable standard;
c. Prejudgment and postjudgment interest;
d. Attorney fees, expert fees, and litigation costs where authorized;
e. Actual damages or, on the CAVRA count, $150,000 liquidated damages, punitive damages, fees, costs, and equitable relief under 18 U.S.C. section 2255;
f. All statutory and enhanced damages available under California Civil Code section 52.5;
g. Such other legal or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

POTTER HANDY LLP

Dated: August 26, 2026 By: /s/ Mark Potter .
Mark Potter
Attorneys for Plaintiff